UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOYCE ENIX,

       Plaintiff,

v.                                     CASE No. 8:09-CV-2042-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.
_____

## ORDER

THIS CAUSE came on for consideration upon the plaintiff's Motion for Remand Under Sentence Six of 4[2] U.S.C. § 405(g) (Doc. 23).[1] The plaintiff requests a remand for the Commissioner of Social Security to consider new medical records, most of which were generated after the date of the law judge's decision, concerning seizures and a diagnosis of epilepsy (id.). Ruling on this motion was deferred earlier pending receipt of briefing on the plaintiff's challenges to the law judge's decision, if any (Doc. 25). The plaintiff did not challenge the law judge's decision within the time allotted.

---

[1]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 16).

Therefore, only the plaintiff's contentions in the motion for remand have been considered. Because the plaintiff has failed to establish sufficient grounds for a sentence six remand, her motion will be denied.

I.

A federal court is authorized, in the sixth sentence of 42 U.S.C. 405(g), to remand a case upon "a showing that there is new evidence which is material and that there is good cause for failure to incorporate such evidence into the record in a prior proceeding." Milano v. Bowen, 809 F.2d 763, 766 n.2 (11th Cir. 1987). Evidence is material if there is a reasonable possibility that it will change the administrative result. Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998). Where, as here, the final administrative decision was rendered by the law judge, the new evidence must relate to the period before the law judge's decision. Leiter v. Commissioner of Social Security Administration, 377 Fed. Appx. 944, 950 (11th Cir. 2010)(unpub. dec.); Vlamakis v. Commissioner of Social Security, 172 Fed. App. 274, 277 (11th Cir. 2006)(unpub. dec.).

II.

The plaintiff's only argument in support of remand is that the new records "tend to bolster the Plaintiff's subjective reports to the

Administrative Law Judge" about the severity of her seizure disorder (Doc. 23, p. 3). This argument is unpersuasive. While the law judge did discount, to some extent, the plaintiff's testimony concerning the frequency of her seizures, he did so on the basis of her treating physician's progress notes and that doctor's opinion (Tr. 20-21). There is nothing in the new records that would plausibly cause the law judge to change his determination to discount the plaintiff's testimony.

Moreover, a review of the proposed evidence reveals that it does not meet the materiality requirement.[2] Specifically, the evidence does not show a significantly changed condition prior to the date of the law judge's decision and, at most, indicates a worsening condition thereafter.

In the decision dated November 19, 2008, the law judge evaluated the evidence of the seizure disorder in detail (Tr. 20-21) and recognized the plaintiff's seizure disorder as a "severe impairment." Consequently, he found, due to that impairment, functional limitations of avoiding working at unprotected heights, operating a motor vehicle, and

---

[2]Arguably, the evidence does not establish good cause for the failure to incorporate most of it into the administrative proceedings, since the Appeals Council's decision was rendered on September 4, 2009, and the new records were dated prior to that, except for the last document, which was dated September 9, 2009. The Commissioner, however, does not advance any such contention.

working around dangerous or moving machinery (Tr. 19). In this respect, the law judge stated in part (Tr. 20-21):

> In May 2004 [treating physician Dr. William O. Tatum] provided a medical source statement indicating that the claimant should avoid operating dangerous machinery and driving [undoubtedly as a seizure precaution]. He further opined that the claimant could feel a seizure coming on and take appropriate safety precautions. He added that the claimant did not require extra supervision or the need to lie down at unpredictable intervals during a work shift. Dr. Tatum noted that the claimant's seizures typically lasted less than two minutes and occurred approximately once a month. She usually had warning of the seizures and although they were less than one minute before the onset of the seizure, she was usually able to take the necessary precautions (Ex B-18F). Progress notes from Tampa General Hospital document treatment for a possible break-through seizure in January 2007 and again in May 2007. However, Dr. Tatum noted that she was otherwise doing great with no reported adverse side effects of medication (EX B44).

The medical progress notes submitted by the plaintiff in support of remand span the time period from November 2008 to September 2009, and relate to five follow-up office visits with her neurologist for the previously-diagnosed seizure disorder (Docs. 23-1, 23-2, 23-3, 23-4, 23-5). On the first of these visits, on November 7, 2008, the plaintiff reported that she had a "breakthrough seizure" while having her teeth cleaned (Doc. 23-1, p. 1). Dr.

Tatum noted a previous diagnosis of "[l]ocalization-related epilepsy," opted to maintain her on the same medication and dose, and stated that she was to return in "a couple of months" for a follow-up visit (id.).

This is the only new medical note that addresses the plaintiff's condition prior to the law judge's decision on November 19, 2008. There is nothing remarkable in this note. Although it refers to what is termed a "breakthrough seizure," the law judge mentioned in his decision "breakthrough seizures" that the plaintiff had experienced in the past (Tr. 21). Consequently, this evidence was not new. Moreover, it was not material, since there is not a reasonable possibility that it would change the law judge's decision.

The other four notes that were submitted were all prepared after the date of the law judge's decision. They do not purport to relate back to the period before that decision.

The plaintiff returned to Dr. Tatum's office on January 9, 2009, reporting that she had experienced "2 or 3 petit mal seizures" since her last visit (Doc. 23-2, p. 1). On this date, Dr. Tatum noted a diagnosis of "[m]edically intractable localization related epilepsy manifest as recurrent complex partial seizures" (id.). Though her EEG was normal, he stated that

he planned to admit her for a presurgical evaluation and "further evaluate her in the hospital relative to her uncontrolled complex partial seizures with further recommendations thereafter" (id.).

The plaintiff returned for a followup appointment with Dr. Tatum on May 15, 2009, at which she reported having daily petit mal seizures (Doc. 23-3, p. 1). Dr. Tatum stated that he suspected these daily episodes were "due to concentration and attentional deficits as opposed to epileptic origin" and further noted that the plaintiff "would not agree to considering brain surgery" (id.). Thus, the plan was to continue the plaintiff on her current medication and follow up in three months (id.).

The plaintiff followed up with Dr. Ali Bozorg, Dr. Tatum's successor, on August 5, 2009 (Doc. 23-4). On this date, she reported having one episode of "lip smacking, drooling, staring and unresponsiveness" per month and "1 grand mal seizure every 3 months or so" (id.). She also reported that her last seizure was "about a month and a half ago" (id.). Dr. Bozorg noted a diagnosis of "[i]ntractable epilepsy, localization related," additionally stating that the plaintiff was "doing very poorly" despite her medication (id.). He further noted that the plaintiff again expressed resistance

to surgical intervention (id.). The plan was to continue on her medication and follow up in six months (id.).

The final record reflects a follow-up appointment with Dr. Bozorg on September 9, 2009 (Doc. 23-5). The plaintiff reported on this date that "she has had a couple of seizures since her last visit about 5 weeks ago" (id.). Dr. Bozorg noted her previous diagnosis of "[i]ntractable localization related epilepsy," recommended surgery, which the plaintiff again declined, and granted her request for a prescription refill (id.).

The latter four medical notes submitted by the plaintiff fail to demonstrate that the plaintiff's condition during the relevant time period was actually more severe than the law judge thought. These records, rather, reflect only the neurologists' present impressions of the plaintiff's seizure disorder and their plans for future treatment.

Arguably, the records show that the plaintiff's condition has worsened since the time of the law judge's decision. That circumstance might support a new application for supplemental security income (but not disability insurance benefits, since the plaintiff's date last insured was March 31, 2008).

The records from 2009, however, do not show that the plaintiff's functional limitations from the seizure disorder are greater than those found

by the law judge. Importantly, the plaintiff has not challenged the law judge's finding in any respect, including the finding of functional limitations due to the seizure disorder. Moreover, in her conclusory motion for remand, the plaintiff has not even attempted to show that the new submissions would possibly change the law judge's findings regarding those limitations.

In short, the new records are not material within the meaning of the sixth sentence of §405(g). Accordingly, a remand is not warranted.

It is, therefore, upon consideration

ORDERED:

1. That the plaintiff's Motion for Remand Under Sentence Six of 4[2] U.S.C. (Doc. 23) be, and the same is hereby, **DENIED**.

2. That, because the plaintiff has not filed a memorandum challenging the Commissioner's decision, the complaint is hereby DISMISSED. The Clerk shall enter judgment accordingly and CLOSE this case.

DONE AND ORDERED at Tampa, Florida, this 5th day of November, 2010.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE